05-6967-cr
United States v. Sero

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

———————

August Term, 2006

(Submitted: July 12, 2007                    Decided: March 19, 2008)

Docket No. 05-6967-cr

———————

UNITED STATES OF AMERICA,

*Appellee*,

− v. −

FERNANDO SERO, also known as Ferdie Resada,

*Defendant-Appellant*.

———————

Before: WALKER, B.D. PARKER, *Circuit Judges*, and CASTEL, *District Judge*.[1]

Appeal from a judgment of conviction in the United States District Court for the Southern District of New York (Brieant, *J.*) for arms trafficking in violation of the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. part 120, *et seq*. Affirmed.

---

[1] The Honorable P. Kevin Castel, United States District Court for the Southern District of New York, sitting by designation.

KATHERINE ALFIERI, White Plains, N.Y., *for Defendant-Appellant*.

PERRY A. CARBONE and CELESTE L. KOELEVELD, Assistant U.S. Attorney, *for* Michael J. Garcia, U.S. Attorney, Southern District of New York, New York, N.Y., *for Appellee*.

PER CURIAM:

Fernando Sero appeals from a judgment of conviction in the United States District Court for the Southern District of New York (Brieant, *J.*). Sero was convicted of exporting weapons and other defense articles from the United States to the Philippines in violation of the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Part 120, *et seq*. Sero pled guilty to one count of a four count indictment charging him with unlawfully shipping the following gun parts and amunition: three take-down pins, one trigger housing unit, one bolt group, one sighting group, one magazine release, three receivers, one stock, one buffer spring, ten 7.62 mm magazines, two boxes of .40 caliber Black Talon DP cartridges, and three boxes of weapons primers. He was sentenced principally to 40 months imprisonment – – six months below the bottom of the guideline range – – followed by a three-year term of supervised release. This appeal, which challenges the length of his sentence, followed.

**DISCUSSION**

Sero argues that his sentence is unreasonable because the district court: (1) should have applied a lower offense level under U.S.S.G. § 2M5.2(a)(2); (2) misunderstood its authority to grant a downward departure; and (3) imposed a "seemingly automatic" term of supervised

2

release.  We review the district court's interpretation of the sentencing guidelines *de novo*, *United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir. 2005), and the court's application of the guidelines to the facts for an abuse of discretion, *United States v. Selioutsky*, 409 F.3d 112, 119 (2d Cir. 2005).  The district court's sentence is reviewed for procedural and substantive reasonableness.  *See United States v. Fernandez*, 443 F.3d 19, 25 (2d Cir. 2006).  "We recognize that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."  *Id.* at 27.

## I. U.S.S.G. § 2M5.2(a)(2)

Appendix A of the Sentencing Guidelines directs the application of § 2M5.2 to violations of the AECA. All violations of the AECA result in a base offense level of 26, unless "the offense involved only non-fully automatic small arms (rifles, handguns, or shotguns) *and* the number of weapons did not exceed ten," in which case the offense level is 14 under § 2M5.2(a)(2). U.S.S.G. § 2M5.2(a)(1) (emphasis added).  Sero argues that the district court misinterpreted § 2M5.2 and misapplied that provision by "preclud[ing] consideration of the lower guideline range where the offense conduct was by all accounts minor, yet included a small amount of ammunition."  This is an issue of first impression in this circuit.

Sero contends that the higher offense level of § 2M5.2(a)(1) only applies to sophisticated weaponry and more serious offenses.  But his interpretation is belied by both the language of the statute and its legislative history.  *See United States v. Martinez-Santos*, 184 F.3d 196, 204 (2d Cir. 1999) ("[W]hen interpreting the Guidelines . . . our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary

3

meaning of the words used." (internal quotes and citation omitted)). Although the language of the original statute required a determination of whether the offense involved "sophisticated weaponry"[2], that language was eliminated by the Sentencing Commission in 1990 "in an effort to better distinguish the more and less serious forms of offense conduct covered." U.S.S.G. § 2M5.2 (1990) Historical Notes. Under the amended statute, eligibility for the lower offense level is limited to offense conduct which involved "only non-fully automatic small arms" in which "the number of weapons did not exceed ten." U.S.S.G. § 2M5.2(a)(2). Because the language of the guideline is clear, our inquiry ends. We find that the guideline does not permit finding an exception for including ammunition, no matter how small the quantity.[3] *See, e.g.*, *United States v. Muthana*, 60 F.3d 1217, 1224 (7th Cir. 1995) (where the defendant's offense involved rounds of ammunition, § 2M5.2(a)(2) does not apply).

Furthermore, to the extent that Sero argues that § 2M5.2 does not apply to his offense, Application Note 1 of the provision states that: "[u]nder 22 U.S.C. § 2778, the President is authorized . . . to control exports of defense articles. . . . The items subject to control constitute the United States Munitions List, which is set out in 22 C.F.R. Part 121.1." U.S.S.G. § 2M5.2 Application Note 1. Because ammunition is included in the Munitions List, "offenses involving ammunition are not excepted from the scope of U.S.S.G. § 2M5.2." *United States v. Galvan-*

---

[2] The original version of § 2M5.2 (1984) provided:
(a) Base Offense Level (Apply the greater):
    (1) 22, if sophisticated weaponry was involved; or
    (2) 14.

[3] To the extent that firearms are harmless without ammunition, this may have been an intentional omission by Congress.

*Revuelta*, 958 F.2d 66, 69 (5th Cir. 1992). In sum, the district court applied the appropriate offense level.[4]

Although we have determined that Sero's offense conduct fails to meet one of the two conjunctive requirements for the lower offense level to apply, we nevertheless address Sero's additional claims as matters of first impression in this circuit. Sero challenges the district court's conclusion that the lower offense level does not apply on the grounds that the shipment included many parts that could be used in both fully automatic and semi-automatic weapons. This challenge asks us to decide whether firearm parts constitute weapons under § 2M5.2(a)(2), and, if so, whether parts that may be used in both fully automatic and non-fully automatic firearms preclude consideration of the lower offense level.

We conclude that although Sero's shipment did not include more than ten fully assembled weapons, the lower offense level still does not apply because the items were capable of servicing more than ten fully or non-fully automatic weapons. We agree with our sister circuits that a sensible reading of § 2M5.2 dictates that "it is sufficient if the item in question is a *component*" of a weapon. *See United States v. Tsai*, 954 F.2d 155, 163 (3d Cir. 1992) (emphasis in original); *United States v. Nissen,* 928 F.2d 690, 695 (5th Cir. 1991). Any interpretation requiring the item exported to be in and of itself a complete weapon would allow offenders to evade the higher offense level by separately shipping component parts that are easily re-assembled overseas. *See Nissen*, 928 F.2d at 695.

---

[4] The court also took the quantity and type of items shipped into account when considering the factors under 18 U.S.C. § 3553. As noted, Sero was sentenced below the sentencing guidelines range.

5

Sero also argues that because some of the exported parts could be used in both fully automatic and non-fully automatic weapons, we cannot assume that he intended the parts for assembly in fully automatic weapons and the lower offense level should apply. First, although specific intent is an element of the crime to which Sero pled guilty, it is not a factor considered in § 2M5.2(a). Whether Sero intended the parts to be used in fully automatic or non-fully automatic weapons is, therefore, irrelevant. In addition, as discussed below, Sero had no control over how the parts were used overseas.

## II. Section 2M5.2 Application Note 1

Application Note 1 to U.S.S.G. § 2M5.2 provides that "[t]he base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States. In the unusual case where the offense conduct posed no such risk, a downward departure may be warranted." Sero contends that he is entitled to a downward departure pursuant to the application note because his conduct was beneficial in that he was selling weapons to anti-terrorist groups in the Philippines and not to insurgents.

Sero argues that the district court misapprehended its authority to downwardly depart erroneously believing that, because the weapons Sero was convicted of selling appear on the United States Munition List pursuant 22 U.S.C. § 2278, it lacked discretion to depart. In *United States v. Hendron*, we concluded that whether a downward departure under § 2M5.2 Application Note 1 may be warranted, is "a determination committed to the unreviewable discretion of a sentencing court unless the court mistakenly believes that it lacks the authority to depart downwardly." 43 F.3d 24, 26 (2d Cir. 1994) (per curiam). While the district court stated

6

initially that it rejected Sero's downward departure because "the policy is reflected in the statute," it then went on to consider the degree to which "the violation threatened a security or foreign policy interest of the United States" as required by Application Note 2 before downwardly departing. It explained that "it is not a good defense to say that the defendant sold to the right side or that he was not selling directly to the insurgents. There is no indication that he was." Moreover, it found that a "citizen cannot pick and choose the firearm vendees that he will wish to deal with to the detriment of the policies of the State department" and that Sero had made no good faith attempt to receive an export license, suggesting that Sero knew that his gunrunning activity was potentially harmful. The consistent theme throughout the district court's comments was that Sero's conduct posed a general risk to United States foreign policy. The presumption that a district court understands its authority to depart may be "overcome only in the rare situation where the record provides a reviewing court with *clear evidence* of a substantial risk that the judge misapprehended the scope of his departure authority." *United States v. Brown*, 98 F.3d 690, 694 (2d Cir. 1996) (emphasis added). That situation is not present here given our finding that the district court adequately considered the relevant factors under the application note. Therefore, the court's refusal to downwardly depart is not reviewable. *See United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005) ("[A] refusal to downwardly depart is generally not appealable" unless "a sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal.").

## III. Term of Supervised Release

Sero's claim that the district court imposed a "seemingly automatic," "errant," and "unreasonable" term of supervised release is without merit. The three-year supervised release was consistent with the period of supervised released authorized by 18 U.S.C. § 3583(b)(2) (up to three years) and U.S.S.G. § 5D1.2(a)(2). "[W]e presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the [§ 3553(a)] factors." *Fernandez,* 443 F.3d at 30. There is nothing in the record to suggest that the district court here failed to discharge this duty. To the contrary, the district court clearly articulated its consideration of the § 3553(a) factors and carefully considered whether the Guidelines sentence it imposed would be appropriate. *See United States v. Crosby*, 397 F.3d 103, 115 (2d Cir. 2005). We see no basis for finding the sentence unreasonable. *See United States v. Booker,* 543 U.S. 220, 260-61 (2005); *United States v. Stewart*, 485 F.3d 666, 673 (2d Cir. 2007).

## CONCLUSION

For these reasons, we affirm.