# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 3, 2012

Lyle W. Cayce
Clerk

No. 11-50159

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HUMBERTO DIAZ-GOMEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, GARZA, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Humberto Diaz-Gomez ("Diaz") challenges the district court's application of the United States Sentencing Guidelines Manual ("U.S.S.G.") § 2M5.2, arguing the court erred by finding that he did not qualify for a base offense level of 14 under subsection (a)(2) and by applying the base offense level of 26 under subsection (a)(1). Because the district court did not err in its application of § 2M5.2, we AFFIRM the court's judgment.

## FACTS AND PROCEEDINGS

In November 2010, Diaz pleaded guilty to two counts of violating 18 U.S.C. § 554 by: (1) attempting to export a nine-millimeter semi-automatic handgun,

No. 11-50159

five ammunition magazines, 611 rounds of nine-millimeter ammunition, and fifty rounds of .38 caliber ammunition, and (2) concealing the items for export. Border patrol agents discovered the items hidden in the side panels of Diaz's car when he attempted to cross the Texas border into Mexico in July 2010.

Following his plea, a probation officer prepared a presentence report ("PSR") and assigned a base offense level of 14 pursuant to U.S.S.G. § 2M5.2(a)(2).  The then-effective language of the Guidelines provided:

> (a) Base Offense Level:
>      (1) 26, except as provided in subdivision (2) below;
>      (2) 14, if the offense involved *only* non-fully automatic small arms (rifles, handguns, or shotguns), and the number of weapons did not exceed ten.

U.S. SENTENCING GUIDELINES MANUAL § 2M5.2 (2010) (emphasis added).

The Government objected that the plain language of § 2M5.2(a)(1) and the facts of the case required a base offense level of 26.  The probation officer revised the PSR and assigned a base offense level of 26, which was reduced by three for acceptance of responsibility, resulting in a total offense level of 23. With a criminal history category of III and a total offense level of 23, Diaz's Guidelines sentencing range was 57–71 months of imprisonment.

Diaz objected to the revised base offense level of 26, arguing that because he pleaded guilty to an offense involving only one semi-automatic weapon, the initial PSR's recommended base offense level of 14 under § 2M5.2(a)(2) was correct. At the sentencing hearing in February 2011, the district court overruled Diaz's objection to the higher base offense level. The court considered the language of the Guidelines and determined that it provided the lower base offense level for offenses involving firearms alone, noting the use of the term "only" in subsection (a)(2). Thus, because Diaz pleaded guilty to an offense involving a firearm and ammunition, subsection (a)(2) did not apply. The district

2

No. 11-50159

court further determined that nine-millimeter rounds, such as the 611 rounds found in Diaz's car, could be used in fully automatic weapons.

However, while overruling Diaz's objection on the base offense level, the court also noted that a Guidelines sentence range of 57–71 months imprisonment based on a base offense level of 26 was too high but that a sentence range of 15–21 months pursuant to a base offense level of 14 would be too low. After considering the factors under 18 U.S.C. § 3553(a), the court concluded that a sentence between the two Guidelines ranges was reasonable and sentenced Diaz to 36 months of imprisonment, making a downward variance from the revised PSR's recommended sentencing range. Diaz timely appealed, challenging the district court's ruling that he was ineligible for § 2M5.2's lower base offense level of 14, and requesting remand for resentencing under the lower Guidelines range.

## DISCUSSION

We review the district court's interpretation and application of the Sentencing Guidelines de novo. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

Diaz argues the district court erred by finding that § 2M5.2(a)(2) did not apply because the court improperly read the term "only" in isolation without interpreting subsection (a)(2) in the context of the overall Guidelines. Diaz asserts that, when considered as a whole, the design and purpose of § 2M5.2 is to apply the lower base offense level in subsection (a)(2) in cases of "truly minor exports of military equipment," such as his. He contends the higher base offense level in subsection (a)(1) is intended for export of serious, sophisticated weapons such as missiles, aircraft, and military electronics. Accordingly, because he only pleaded guilty to attempting to export one semi-automatic weapon and basic, non-sophisticated nine-millimeter and .38 caliber ammunition, Diaz argues he is not disqualified from the lower base offense level of 14.

No. 11-50159

The language of § 2M5.2 forecloses Diaz's argument. While Diaz argues that "[b]asic ammunition, like the nine-millimeter and .38 caliber cartridges involved in [his] case, can hardly be considered sophisticated," the plain language of § 2M5.2 does not support his claim that the Guideline is aimed at distinguishing between exports of sophisticated, serious weapons from exports of less sophisticated weapons or ammunition. The language of § 2M5.2 indicates that the Sentencing Commission intended for the section to apply to the full range of exports of ammunition and weapons. The application note states: "Under 22 U.S.C. § 2778, the President is authorized . . . to control exports of defense articles . . . . The items subject to control constitute the United States Munitions List, which is set out in 22 C.F.R. Part 121.1." U.S. SENTENCING GUIDELINES MANUAL § 2M5.2, cmt. n.1. In turn, the referenced Munitions List specifically lists:

CATEGORY III-AMMUNITION
(a) Ammunition for the arms in Category I . . . of this section. [Nonautomatic, semi-automatic, and fully automatic firearms to caliber .50].

22 C.F.R. § 121.1.  As this court has noted previously in response to a similar argument, the fact that the Munitions List covers a range of unsophisticated weapons and ammunition, including nonautomatic firearms under .50 caliber,[1] prevents Diaz from arguing the design and purpose of § 2M5.2 was generally intended to apply to sophisticated weaponry. *See United States v. Galvan-Revuelta*, 958 F.2d 66, 68 (5th Cir. 1992) ("These items [revolvers, pistols, and rifles up to .50 caliber] no more constitute 'serious military or space hardware' than does the ammunition that goes in them.").[2]

---

[1]  For reference, a .50 round is equivalent to 12.7 millimeters.

[2]  Though the court in *Galvan-Revuelta* reviewed a prior version of § 2M5.2, the Guideline application note language analyzed by the court in reaching its conclusion is substantially unchanged.

No. 11-50159

Given this broad scope of intended coverage for § 2M5.2, we turn our attention to whether the use of the word "only" in subsection (a)(2) limits the application of the lower base offense level to an offense that truly involves *only* non-fully automatic weapons and no ammunition. For reference, the exact language of § 2M5.2(a)(2) provides for a base offense level of "14, if the offense involved *only* non-fully automatic small arms (rifles, handguns, or shotguns), and the number of weapons did not exceed ten." (emphasis added).

When interpreting the Sentencing Guidelines, we apply ordinary rules of statutory construction and, if the language of the Guidelines is unambiguous, the inquiry ends with the plain meaning of that language. *United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007). The plain meaning controls "unless it leads to an absurd result." *Id.* (quotation marks omitted) (quoting *United States v. Solis-Campozano*, 312 F.3d 164, 166 (5th Cir. 2002)). We see no reason to interpret the plain meaning of the term "only" to mean anything other than "only." As the district court aptly stated during the sentencing hearing, "'only' means 'only.'" Diaz did not have "only" one small gun hidden in his car—he also had more than 600 rounds of ammunition that could be used in the gun.

We note that this interpretation of § 2M5.2 comports with our sister circuit's decision in *United States v. Sero*, 520 F.3d 187 (2d Cir. 2008) (per curiam). "Because the language of the guideline is clear, our inquiry ends. We find that the guideline does not permit finding an exception for including ammunition, no matter how small the quantity." *Id.* at 190 (citing the Seventh Circuit's decision in *United States v. Muthana*, 60 F.3d 1217, 1224 (7th Cir. 1995), which held that § 2M5.2(a)(2) did not apply when a defendant's offense involved thousands of rounds of small arms ammunition)). As further noted by the court in *Sero*, "To the extent that firearms are harmless without ammunition, this may have been an intentional omission by Congress," *id.* at 190 n.3, a proposition we also find reasonable.

5

No. 11-50159

Nonetheless, Diaz argues the district court's interpretation of § 2M5.2 would provide "absurd" results because "one who smuggles 10 semiautomatic rifles will have a base offense level of 14. But one who smuggles a single bullet will have a base offense level of 26, because his offense did not involve 'only' firearms." Yet by arguing for an interpretation of § 2M5.2 that would ignore any ammunition smuggled with the weapons, Diaz's argument could produce similarly absurd results. Presumably under his offered interpretation, an individual smuggling semi-automatic rifles could also attempt to smuggle hundreds or even thousands of rounds of ammunition for use in the weapons but would nonetheless still qualify for a base offense level of 14, so long as he took care to limit his smuggling efforts to ten or fewer guns.

Interpreting the language of the then-effective § 2M5.2 to mean that ammunition should not be ignored is further clarified by considering the then-proposed, and subsequently adopted, amendments to § 2M5.2. In November 2011, a revision to the section took effect, stating:

(a) Base Offense Level:
(1) 26, except as provided in subdivision (2) below;
(2) 14, if the offense involved only (A) non-fully automatic small arms (rifles, handguns, or shotguns), and the number of weapons did not exceed two, (B) ammunition for non-fully automatic small arms, and the number of rounds did not exceed 500, or (C) both.

U.S. SENTENCING GUIDELINES MANUAL § 2M5.2 (Nov. 1, 2011).

This revision lends additional support to the district court's interpretation that § 2M5.2 is not focused solely on the number of firearms involved but instead requires the court to consider both the number of firearms and the quantity of ammunition in light of concerns about the flow of illegal firearms across the southwestern border of the United States into Mexico. U.S. SENTENCING GUIDELINES MANUAL app. C, vol. III, amend. 753, at 401 (2011). As explained in the commentary accompanying the 2011 revision, § 2M5.2 was amended, in

part, to address the inconsistencies in how courts were applying the section to cases involving only ammunition or combinations of small arms and ammunition. *Id.* at 403–04 ("There appears to be differences in how §2M5.2 is being applied by the courts in such cases."). "The Commission determined that, as with export offenses involving more than two firearms, export offenses involving more than 500 rounds of ammunition are more serious and more likely to involve trafficking." *Id.* at 404; *see also United States v. Solis*, --- F.3d ----, 2012 WL 935198, at *2 (5th Cir. Mar. 21, 2012) ("Amendments to the guidelines and their commentary intended only to *clarify*, rather than effect substantive changes, may be considered even if not effective at the time of the commission of the offense or at the time of sentencing." (quotation marks omitted) (quoting *United States v. Anderson*, 5 F.3d 795, 802 (5th Cir. 1993) (citing U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b)(2))). Considering these clarifying comments, the district court did not err in applying the higher base offense level under § 2M5.2(a)(1).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED. Additionally, we note the district court's judgment contains a typographical error indicating that the statute of conviction was 18 U.S.C. § 544, (illegal relanding of exported goods with a maximum sentence of 24 months of imprisonment) instead of § 554 (illegally exporting goods with a maximum sentence of 120 months of imprisonment). Because the criminal complaint and indictment correctly identified the proper statute of conviction and the judgment correctly stated that the offense was concealment of illegal exportation of merchandise, any error from this typographical mistake was harmless and we REFORM the judgment to reflect conviction and sentencing under 18 U.S.C. § 554. *See* FED. R. APP. P. 10(e)(2)(C); *United States v. Mondragon-Santiago*, 564

F.3d 357, 369 (5th Cir. 2009) (reforming judgment to correct typographical error).