13-146-cr
*United States v. David Adams*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————————

August Term, 2013

(Argued: April 25, 2014                               Decided: September 25, 2014)

Docket No. 13-146-cr

———————————————

UNITED STATES OF AMERICA,

*Appellee,*

DENNIS MCCADE, TRENTON GARY, also known as Tito, BRIAN EVINS, DENTE RYAN, also known as Taz, VERNAL HENRY, also known as Vernal Allen, also known as The Brit, KELLY CAMPBELL, DAVID MONTERO, also known as Dirty,

*Defendants,*

*-v.-*

DAVID ADAMS,

*Defendant-Appellant.*

———————————————

Before:           WALKER, HALL, *Circuit Judges*, and MURTHA, *District Judge.*[*]

———————————————

On appeal from a judgment of the United States District Court for the Southern District of New York (Griesa, *J.*) following a plea of guilty convicting Appellant of one count of conspiracy to distribute and possess with intent to distribute 1,000 kilograms and more of marijuana, Appellant asserts that his plea of guilty was invalid because the court did not inquire about the effect of his heart condition and the medications he was taking on his ability knowingly and voluntarily to enter a guilty plea. Notwithstanding that a two-year period elapsed between when defendant changed his plea and when he was sentenced,

———————————————

[*]  The Honorable J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

defendant raised no objection to the validity of his plea either during that period or at the time of sentencing, and Appellant has introduced no evidence to demonstrate that but for the trial court not inquiring about the effect of his heart condition and the related medications on his ability knowingly and voluntarily to enter a plea, he would not have entered a guilty plea. On review for plain error, we AFFIRM the judgment of conviction.

———————————————

JANIS M. ECHENBERG (BRENT S. WIBLE, *on the brief*), *for* PREET BHARARA, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

JULIA P. HEIT, ESQ., New York, NY, *for Defendant-Appellant.*

———————————————

PER CURIAM:

Defendant-Appellant David Adams ("Defendant" or "Adams") appeals from a judgment of conviction entered after his plea of guilty on December 7, 2012, in the United States District Court for the Southern District of New York (Griesa, *J.*), convicting him of one count of conspiracy to distribute and possess with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The district court sentenced Adams principally to a term of 210 months' imprisonment, to be followed by a five-year term of supervised release. Adams contends that his plea should be vacated because the district court violated Rule 11 of the Federal Rules of Criminal Procedure when it failed to inquire during the plea allocution about the possible impact his heart condition and medications had on his ability to enter a knowing, intelligent, and voluntary plea. For largely the same reasons, Adams further argues that the appeal waiver in the Plea Agreement, by which he waived the right to challenge a sentence within a stipulated range, is also invalid. Finally, Adams contends that his sentence was substantively

2

unreasonable, and violates the Eighth Amendment. We affirm the judgment of the district court.

## BACKGROUND

### I.     Adams's Plea

In December 2009, Adams was arrested, along with three other co-defendants, for running a large-scale marijuana-trafficking operation. He was charged with one count of conspiracy to distribute and possess with intent to distribute 1,000 kilograms and more of marijuana. Approximately a year later, pursuant to a plea agreement (the "Plea Agreement"), Adams pleaded guilty to the charge.

In the Plea Agreement, Adams and the government ("the parties") stipulated to an offense level of 37 under the Sentencing Guidelines and a guidelines range of 210 to 262 months' imprisonment (the "Stipulated Guidelines Range"). The parties agreed to seek neither "a downward nor an upward departure from" that range. "The parties further agree[d] that a sentence within the Stipulated Guidelines Range would constitute a reasonable sentence in light of all the factors set forth in" 18 U.S.C. § 3553(a), but that either party could, directly or indirectly, seek a sentence outside the stipulated range based on § 3553(a) factors. Additionally, by entering into the Plea Agreement, Adams "agreed . . . not [to] file a direct appeal . . . [of] any sentence within or below the Stipulated Guidelines Range" and "waive[d] any and all right to withdraw his plea or attack his conviction, either on direct appeal or collaterally . . . [except on the ground that the government failed to produce in discovery] information establishing [his] factual innocence."

3

During the Rule 11 plea proceedings, the district court confirmed that Adams was satisfied with his attorney's representation and advice, had discussed the Plea Agreement "thoroughly" with his attorney, and had signed the Plea Agreement. The court further confirmed that Adams was not "under the influence of any alcohol or narcotics" and had not been induced to plead guilty as a result of "any force or any threats." The court then discussed the indictment, explained what the government would have to prove at trial, and asked Adams whether he understood this information. Adams replied that he did. After reviewing the forfeiture allegation and the penalties associated with the offense charged, the court again asked Adams whether he understood "the rights [he was] giving up by pleading guilty" and also informed Adams that he did not need to plead guilty but could "maintain a plea of not guilty and go to trial." Adams again stated that he understood. The court reminded Adams that if he pled guilty he would be convicted without a trial on the basis of his plea and his own admission. In response, Adams again confirmed that he understood.

Finally, when asked whether he understood that there was a "stipulated guideline range of 210 to 262 months, and the Plea Agreement does further state that if the sentence is within that range or below it, there will be no appeal and no motion against the sentence," Adams's attorney attested that his client "fully under[stood] the parameters of the plea and what he signed." Having heard counsel's representation and seeking Adams's response, the court then asked Adams, "Is that correct?" Adams responded, "Yes, it is, your Honor."

## II.    Adams's Medical Condition

Eight years prior to criminal charges being brought against him here, Adams was diagnosed with congestive heart failure. In 2010, while in prison on these charges, he

4

underwent surgery to implant a pacemaker. Throughout his incarceration, on account of his heart condition, Adams sought medical care and met with doctors. According to Adams, he was taking twelve medications for his condition at the time of his plea, some of which he asserts have potential side effects that could affect cognitive function. Apart from his heart condition, at the time of his plea Adams also suffered from anxiety and depression, for which he saw a psychiatrist once a month and was prescribed antidepressants. Medical personnel treating him, however, did not observe any impact of the medications on Adams's cognitive function. For example, in a letter dated June 16, 2010, written prior to the plea proceedings, Dr. Webber, the Director of Non-Invasive Cardiovascular Imaging at New York Downtown Hospital, described Adams's mental state as "[a]lert and oriented," and noted that his "[m]ood [wa]s congruent," and that he did not exhibit any "focal deficits."[1] During a visit at a chronic care clinic on July 19, 2012, several months after the plea proceedings and while on the same medications, Adams informed treating physicians that he was not suffering any side effects.

## III. Adams's Sentencing

On December 7, 2012, almost two years after entering his plea, Adams appeared before the district court for sentencing. At the hearing, Adams argued that he should be given a below-Guidelines sentence because of his medical issues. While the district court considered and credited the information concerning Adams's health problems, it found that it could not ignore the "very serious criminal conduct . . . going on while those health conditions were persisting." Adams was sentenced at the lower end of the Stipulated

---

[1] Dr. Webber also determined that Adams had a "low risk of mortality and hence would [be] exclude[d] . . . from being listed for cardiac transplant" at that time.

Guidelines Range to 210 months' imprisonment, to be followed by a five-year term of supervised release. At the close of the sentencing proceedings, Adams was reminded that he had waived his right to appeal a sentence within the Stipulated Guidelines Range pursuant to the Plea Agreement. Adams, nevertheless, timely appealed.

## DISCUSSION

### I.    Adams's Guilty Plea

Adams's principal contention on appeal is that the district court violated Rule 11 of the Federal Rules of Criminal Procedure when it failed to inquire during the plea allocution about the impact Adams's heart condition and medications had on his ability to enter a knowing, intelligent, and voluntary plea of guilty. As Adams failed to raise any claim that Rule 11 was violated in the court below, we review this claim, asserted for the first time on appeal, for plain error. *United States v. Yang Chia Tien*, 720 F.3d 464, 469 (2d Cir. 2013).[2] Plain error review requires "a defendant to demonstrate that (1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States* v. *Cook*, 722 F.3d 477, 481 (2d Cir. 2013) (internal quotation marks omitted). "[T]o show plain error in the context of Rule 11, 'a defendant must establish that the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea.'" *Yang Chia Tien*, 720 F.3d at 469 (quoting *United States* v. *Garcia,* 587 F.3d 509, 515 (2d Cir. 2009)).

---

[2]  Although Appellant repeatedly argued in his written submissions that the plain error standard of review was not applicable here, even going as far as to suggest that *de novo* review was appropriate, he admitted on the record during oral argument that plain error is the correct and only possible standard of review to be applied in this case.

Given the district court's knowledge of Adams's medical problems, it is possible that the district judge should have asked Adams about his heart condition and medication at the plea hearing, and that its failure to do so was error. *See United States v. Lora*, 895 F.2d 878, 880 (2d Cir. 1990) ("The Second Circuit has adopted a standard of strict adherence to Rule 11."); *United States v. Rossillo*, 853 F.2d 1062, 1066 (2d Cir. 1988) ("[I]f there is *any* indication . . . that [the] defendant is under the influence of any medication, drug or intoxicant, it is incumbent upon the district court to explore on the record defendant's ability to understand the nature and consequences of his decision to plead guilty."); *see also Yang Chia Tien*, 720 F.3d at 468–71. To satisfy the plain error standard applicable to this case, however, the defendant must also establish "a reasonable probability that, but for the error, he would not have entered the plea." *Yang Chia Tien*, 720 F.3d at 469 (internal quotation marks omitted). We need not conclusively resolve whether the district court erred in conducting the Rule 11 proceedings because Adams has made no such showing.

Adams has not demonstrated any reasonable probability that he would not have pleaded guilty, or that the judge would not have accepted his plea, if the district court had inquired about his medical condition or medications. His behavior following entry of his guilty plea confirms that Adams fully intended to plead guilty. Unlike other cases in which defendants have claimed soon after their pleas that their medical conditions vitiated any conclusion that their pleas were knowing and voluntary, Adams made no effort to have his asserted misunderstanding of the proceedings or the consequences of his plea corrected in the two years prior to sentencing or in an otherwise timely manner. *Cf. Yang Chia Tien*, 720 F.3d at 466–68 (defendant unsuccessfully sought to withdraw a plea within seven months of

7

pleading guilty and prior to sentencing); *Rossillo*, 853 F.2d at 1064 (defendant unsuccessfully sought to withdraw his plea within eleven months of pleading guilty and prior to sentencing). Adams neither filed nor sought to file a motion to withdraw his plea during the almost two years separating the plea proceedings and his sentencing.[3]  Only when he did not receive the below-Guidelines sentence he had hoped for did Adams assert, for the first time in this appeal, that his medications and heart condition may have adversely affected his ability to enter a knowing, intelligent, and voluntary plea.  On the record before us, therefore, we conclude that Adams has not demonstrated plain error in connection with his guilty plea, and we affirm Adams's conviction.

## II.    Adams's Sentence

Adams also contends that his 210-month term of imprisonment is "per se unreasonable" and, alternatively, that it violates the Eighth Amendment of the United States Constitution because, given the severity of his heart condition, it represents a death sentence. The government argues that the appeal waiver contained in Adams's Plea Agreement forecloses any challenge to his sentence.  Even assuming that the waiver is unenforceable and that we may reach the merits of Adams's challenge, we would affirm the judgment of the district court.

We review sentences for procedural and substantive reasonableness under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "Procedural error occurs when, for example, the district court improperly calculates the applicable Guidelines range, fails to consider the sentencing factors articulated in 18 U.S.C.

---

[3] We note there is also evidence that Adams may have deliberately attempted to aggravate his medical condition in an effort to receive a below-Guidelines sentence.

8

§ 3553(a), or neglects to explain the reasons for its chosen sentence." *United States v. Kerr*, 752 F.3d 206, 222 (2d Cir. 2014). A district court's substantive determination as to the proper sentence will be set aside "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)).

To the extent Adams argues that the district court erred by failing to depart downward from the 210 to 262-month Guideline range of incarceration on account of his illness, *see* U.S.S.G. § 5H1.4, that argument is without merit. The district court noted correctly that the Guidelines range was advisory and that the court had authority to impose a sentence below that range. Moreover, it expressly considered Adams's medical condition when deciding to impose a Guidelines sentence. *See* App'x at 109–11. It is evident, therefore, that the district court did not misapprehend its authority to depart from the Guidelines range, and its decision not to do so is unreviewable absent such a misapprehension. *See United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005) ("[A] refusal to downwardly depart is generally not appealable" unless "a sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal."); *see also United States v. Sero*, 520 F.3d 187, 192 (2d Cir. 2008) (same).

Adams's attack on the substantive reasonableness of his sentence is similarly unavailing. Sentences are substantively unreasonable only if they are "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Thavaraja*, 740 F.3d 253, 259 (2d

9

Cir. 2014) (internal quotation marks omitted). Applying this "particularly deferential standard," *id.*, we conclude that Adams's sentence falls within the range of permissible decisions. In imposing the 210-month Guidelines sentence, the district court fully credited the evidence regarding Adams's "serious health problems, including a heart condition." App'x at 110. The court then carefully weighed that set of factors, which it found "legitimately b[ore] on sentencing," *id.* at 109, against the seriousness of Adams's criminal conduct, which included his leadership of the large-scale marijuana smuggling operation and his multiple attempts to obstruct justice, *id.* at 109–10. The court further observed that Adams had engaged in this criminal conduct "while those health conditions were persisting." *Id.* at 110. Based on all of these considerations, the court concluded that a 210-month sentence—the bottom of the applicable Guidelines range—was appropriate. *Id.* at 111. It is beyond cavil that the district court carefully considered all of the relevant mitigating and aggravating sentencing factors, and it is not the place of the appellate court to "consider what weight we would ourselves have given a particular factor." *Thavaraja*, 740 F.3d at 259 (internal quotation marks omitted). Given all of the circumstances, we conclude that allowing Adams's sentence to stand would not "damage the administration of justice." *Id.* at 259 (internal quotation marks omitted); *see also United States v. Jones*, 531 F.3d 163, 178 (2d Cir. 2008) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." (internal quotation marks omitted)).

"Lengthy prison sentences, [moreover,] even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition

10

against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms." *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003). We have also recognized that, "in a noncapital case, it is exceedingly rare to uphold a claim that a sentence within the statutory limits is disproportionately severe." *United States v. Caracappa*, 614 F.3d 30, 44 (2d Cir. 2010) (internal quotation marks and emphasis omitted). Adams's sentence, therefore, is not substantively unreasonable nor does it violate the Eighth Amendment.

## III.    Adams's Motion for Hearing

Adams argues that we should order a hearing to determine "whether the federal prison medical facilities can keep [him] alive for 210 months and will in fact make every effort to obtain a heart transplant." Appellant Br. at 49. On this direct appeal from Adams's judgment of conviction, there is no basis for us to order such a hearing. The adequacy of the federal prison medical facilities and the appropriateness of Adams's treatment in those facilities are issues more appropriately raised in other settings, be it the administrative processes available within the Bureau of Prisons or by requesting other forms of relief from the federal courts. *See, e.g.*, 28 U.S.C. § 2241; 42 U.S.C. § 1983. We do not consider and express no views as to the viability of any claims Adams may bring pursuant to those procedures.

## IV.    Adams's Claim of Ineffective Assistance of Counsel

Finally, to the extent that Adams attempts to advance a claim that his attorney was ineffective, we also decline to address that issue in this appeal. "When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim,

11

permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Tarbell*, 728 F.3d 122, 128 (2d Cir. 2013) (internal quotation marks omitted). Cognizant of the fact that the first option is generally preferred, *see Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."), and being unable to resolve Adams's ineffective assistance claim on the present record, we dismiss that claim without prejudice to his advancing that claim in a collateral proceeding under § 2255, or otherwise.

## CONCLUSION

The judgment of conviction entered by the district court is **AFFIRMED**.