14-1204-cr
United States v. DeLaura

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: January 4, 2017     Decided: June 5, 2017)

Docket No. 14-1204-cr

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

Appellee,

- v.-

JOHNATHAN DELAURA, AKA Jon Dulak,

Defendant-Appellant.

- - - - - - - - - - - - - - - - - - -x

Before:            JACOBS, SACK, and CARNEY, Circuit Judges.

Defendant-Appellant Johnathan DeLaura pleaded guilty to multiple child

pornography counts in the United States District Court for the Southern District

of New York (Karas, J.), and was sentenced to 35 years' imprisonment. Shortly

before the guilty plea, the United States Attorney's Office informed the district court of a possible sexual relationship between DeLaura's counsel and DeLaura's mother, and alerted the court to serious conflicts that could result. At the prosecutors' suggestion, the court appointed independent counsel to advise DeLaura on the possible conflict. The court's efforts to get to the bottom of the allegation were then frustrated by DeLaura's defense counsel, who refused to confirm or deny the relationship. Unable to determine what took place, the court told DeLaura to assume that there was a sexual relationship and that various conflicts arose from it, and asked DeLaura whether he wished to waive those hypothetical conflicts. After a confused colloquy, he agreed to waive the hypothetical conflicts, and the district court accepted the guilty plea. On this direct appeal, DeLaura argues that the possible conflicts made his counsel's assistance ineffective. We affirm the conviction because, given the gaps in the record, DeLaura's ineffectiveness challenge is best suited for collateral review, where a district court can take evidence and make factual findings.

> ANDREW H. FREIFELD, New York, New York, for Appellant Johnathan DeLaura.
>
> MARCIA S. COHEN (with Karl Metzner, on the brief), for JOON H. KIM, Acting

2

United States Attorney for the Southern District of New York.

JACOBS, <u>Circuit Judge</u>:

In this direct criminal appeal, the defendant argues that his defense lawyer was ineffective because of a conflict of interest caused by a (possible) secret sexual relationship between the lawyer and the defendant's mother. When the district judge learned of the allegation, he questioned the defense attorney about it, but the (now-deceased) lawyer refused to answer the judge's inquiries, and coyly suggested that the judge instead deduce the answers from a Hollywood movie.

Defendant-Appellant Johnathan DeLaura pleaded guilty to multiple child pornography offenses, and was sentenced to 35 years in prison. Shortly before the plea, the United States Attorney's Office informed the court of a possible sexual relationship between DeLaura's counsel and DeLaura's mother, and alerted the court to the risk of conflicts. The court's effort to get to the bottom of the issue at a hearing to test the allegation was frustrated by DeLaura's lawyer, Gary Greenwald, who refused to confirm or deny it. Unable to determine at the hearing what took place and whether a conflict therefore actually existed, the

3

district court approached the matter in another way. The judge told DeLaura (by then represented by independent, court-appointed "conflict counsel") to make the assumption that there was a sexual relationship from which various conflicts could have arisen, and asked DeLaura whether he wished to waive those hypothetical conflicts. After a confused colloquy, DeLaura agreed to waive the hypothetical conflicts. The district court decided that any conflict was waived, accepted DeLaura's guilty plea, and sentenced him to 35 years' imprisonment.

DeLaura (with new counsel) now argues that Greenwald's conflict rendered him ineffective, and that the conflict waiver was invalid. Because of the gaps in the record, we conclude that his claim is better suited for collateral review, and therefore we decline to consider the ineffectiveness argument on direct appeal. But given the circumstances, a thorough evidentiary hearing would be justified if a habeas petition is filed.

# I

In 2011 and 2012, DeLaura shared and downloaded violent child pornography; he tricked two teenagers into sending him nude photos of themselves and threatened to make the photos public if they refused to meet him

4

for sex; and he sexually abused one of them. Federal agents detected his child pornography on a peer-to-peer site, and, at about the same time, the two teenagers went to the authorities. Law enforcement officers arrested DeLaura in a sting, and he was charged with multiple child pornography counts.

DeLaura retained Gary Greenwald to defend him. DeLaura's mother appears to be the one who located Greenwald and made the fee arrangements: the DeLauras paid a $25,000 retainer, which is the only fee Greenwald received. Then the plot thickened. The central, unresolved question is whether Greenwald had a sexual relationship with DeLaura's mother. If their entanglement existed, it began approximately when DeLaura retained Greenwald and ended a few months later. DeLaura agreed in principle to a plea agreement around the same time the (alleged) relationship allegedly ended.

Somehow, the federal prosecutors heard of the relationship, and they privately confronted Greenwald. He answered some questions and refused to answer others, but (according to the prosecutors) the conversation "certainly suggested to us that the information that we had received [of the relationship] was, was correct." App'x at 50. The conversation also led the prosecutors to

5

believe that Greenwald had forgiven "significant legal fees" in connection with the relationship.  Id.

The government advised the district court by letter on January 17, 2013 that it believed there was a potential conflict, that the nature of the conflict was personal and sensitive, that Greenwald denied any conflict, that the government believed a hearing on the conflict was necessary, and that DeLaura should have independent counsel to advise him on the conflict.  On February 13, 2013, the parties appeared for a status conference to discuss the conflict question.  Greenwald did not oppose the appointment of independent counsel, but initially asked to be present for any interviews the independent counsel conducted with DeLaura.  (The request was later withdrawn.)

The district court appointed Stephen R. Lewis as DeLaura's independent counsel, and the government explained its concerns to him.  He then conferred with Greenwald, who refused to answer any questions on the subject.  When Lewis conferred with his client, he asked DeLaura to assume hypothetically that the allegation was true.  DeLaura told him that, if that were so, he would waive any resulting conflicts.

6

On March 6, 2013, the district court held another conference at which the government disclosed to the court the nature of the conflict: it believed there were "non-platonic interactions between Mr. Greenwald and the Defendant's mother." Id. at 49. Lewis explained the steps he had taken so far; and the court, Lewis, and the government together explained to DeLaura that the following possible conflicts could ensue:

> **1)** because the relationship ended, Greenwald might bear a grudge against DeLaura or might want to spend as little time with him as possible;
>
> **2)** given the ethical and personal problems with the relationship, Greenwald might have an interest in "mak[ing] nice" to the government so that it would not report him to the disciplinary committee, or so that the relationship would not become public, id. at 95; and
>
> **3)** that the fee arrangement could somehow have been based on the relationship, and that Greenwald might have an interest in ending the representation quickly once he was no longer being compensated.

The court then engaged Greenwald in an eyebrow-raising colloquy. Greenwald refused to answer several direct questions about any relationship with DeLaura's mother, said the questions made him angry, tried to mislead the court as to whether he ever spent time alone with the mother (his non-denial is in

7

the margin[1]), and analogized himself to a character in a 2000 movie titled <u>The</u> <u>Contender</u>. The district judge, evidently appalled, said: "You won't deny it. You won't deny it. You want to invoke a movie, that's fine. So let's have the [conflict] hearing." <u>Id.</u> at 64. The court then turned to the prosecutor, who suggested that the government still believed the allegation to be true.

After a brief recess, the district court held a hearing at which DeLaura could waive the possible conflict. But Greenwald's intransigence put the district court in a difficult spot. Our case law dictates that:

> When a district court is sufficiently apprised of even the possibility of a conflict of interest, the court first has an "inquiry" obligation. The court must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.

<u>United States v. Levy</u>, 25 F.3d 146, 153 (2d Cir. 1994) (internal citations omitted).

Only after such an "inquiry" is a district court supposed to conduct a hearing and

---

[1] Stripped of circumlocution, Greenwald conceded that he was alone with DeLaura's mother in his office:

> Moreover, *generally*, when she came to see me, there was *generally* a secretary in the room. Clearly, I never was alone, other than coming to court *or in my office*, ever in my life.

App'x at 59 (emphasis added).

8

determine whether a defendant is willing to waive any conflicts that the inquiry has turned up.  Id.  But notwithstanding persistent efforts to make the appropriate inquiry, Greenwald's refusal to answer questions prevented the court from ascertaining whether any type of conflict arose.

In the circumstances, the court stated that it would not be making any factual findings at the hearing.  Instead, it asked DeLaura to proceed under the hypothetical assumption that the worst-case allegation was true, and then asked if he wished to agree to waive any hypothetical conflicts the assumed facts might create.  DeLaura cooperated with this resourceful expedient and said he would waive the hypothetical conflicts.  App'x at 99 ("I have no problem waiving such claims of ineffective counsel as long as it's clear it is with respect to any and all these allegations, whether they are true or not, that's it.")  He was 38 years old at the time and suffering from no apparent mental incapacity.  He could have approached his mother or his attorney for information about the alleged relationship if he desired.  And DeLaura had been advised by independent counsel, had never objected to the district court's approach, and had never asked the district court to seek out any additional information about the conflict.

9

Throughout the colloquy, the government and the court nevertheless voiced concern that DeLaura was agreeing to the waiver only because he did not believe his mother was sexually involved with his attorney. Their concern was supported by some of what DeLaura said in the colloquy:

> If a sane person were to listen to this and say [the allegation] is true, then logically they would know that there obviously is a conflict and they would never accept anything. They would throw this away. . . . [T]o state to me "okay, you have to assume that this is true and then make a decision upon that," well, logic would, would--you know, it would be illogical to continue if it were true.

Id. at 74. At various times, DeLaura also questioned the reliability of the allegation, repeated the suggestion that it would be illogical to continue with Greenwald as his lawyer if the conflict were real, and ultimately decided to waive because "I have to go with my gut instinct and feel that I'm right on this one." Id. at 109. The government said it thought that what DeLaura felt he was "right" about was "that the allegations are not true." Id. On the other hand, the court asked DeLaura to confirm that he was feeling "right" about the loyalty of his counsel, and DeLaura agreed. Id.

The court and the government persisted in efforts to ensure that DeLaura was indeed assuming that there were conflicts, as he was instructed to do. The

10

court followed up each time DeLaura suggested that he was waiving for the wrong reasons, walked him through each potential conflict in detail, and told him that he was giving up his right to say later that he had waived the conflict only because "at the time, I really didn't think that this was true." Id. at 88. However, the court concluded, "It may be that part of that is, he is just not willing to assume that these allegations are true, but I don't know what more can be said." Id. at 110.

The court ultimately found that DeLaura had agreed to waive the possible conflict. Soon after, DeLaura signed a plea agreement that led to a 420 month sentence. (The parties dispute whether DeLaura received any benefit from his agreement with the prosecution.) DeLaura, with new counsel, now appeals and argues that Greenwald was ineffective because of the possible conflict. Greenwald died while this appeal was pending.

## II

Notwithstanding qualms about a possible conflict, we affirm DeLaura's conviction.

11

"When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." United States v. Adams, 768 F.3d 219, 226 (2d Cir. 2014) (per curiam).

We conclude that DeLaura's ineffectiveness claim cannot be reliably decided on the present record. Ineffectiveness analysis in a case like this proceeds in two steps. First, we consider the waiver. If the waiver is valid, the defendant has no claim. But if the waiver is invalid--either because the conflict is unwaivable, see United States v. Schwarz, 283 F.3d 76, 95-96 (2d Cir. 2002); or because the waiver was not knowing and intelligent, see Levy, 25 F.3d at 158-59; or because the district court failed to make the required inquiry, see id. at 153-- then we consider the underlying conflict claim itself. If the conflict is potential,

12

the defendant must show the conflict prejudiced him;[2] if actual, he need only make the lesser showing of adverse effect. Id. at 152.

This record allows us to answer few of those questions. We do not know whether there was a sexual relationship (or its timing, duration, or terms), whether a conflict arose from it, whether that conflict was so severe as to be unwaivable, or whether DeLaura was harmed by it. An evidentiary hearing would be needed to sort this out. Because the Supreme Court has expressed a preference for resolving ineffectiveness claims on collateral review, Massaro v. United States, 538 U.S. 500, 504 (2003), we affirm the conviction rather than remand the case to the district court. But in the event DeLaura's new attorney files a habeas petition, we think an evidentiary hearing may be in order and that DeLaura's ineffectiveness claim would merit searching evaluation.[3]

_____

[2] The fact that we do not know the circumstances surrounding DeLaura's possible conflict does not make it a "potential conflict" under our case law. A potential conflict of interest does not mean a situation in which it is unclear whether an attorney's interests *currently* diverge from the client's; it means a situation in which it is possible that the attorney's interests will diverge from the client's "*in the future*." United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003) (emphasis added).

[3] To the extent DeLaura argues ineffective assistance unconnected to the alleged conflict, we similarly decline to rule on the issue on direct review. Massaro, 538 U.S. at 504.

## III

DeLaura also argues that his sentence was procedurally flawed because of two issues with his Sentencing Guidelines calculation.  DeLaura stipulated to those Guidelines calculations in his plea agreement, waived his right to appeal any sentence below 485 months, and was sentenced to 420 months' imprisonment.  The appeal waiver bars his procedural challenge.  United States v. Coston, 737 F.3d 235, 237-38 (2d Cir. 2013) (per curiam).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.