17-1786-cr
*U.S. v. Quatrella*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of February, two thousand eighteen.

PRESENT:  JOHN M. WALKER, JR.,
              GERARD E. LYNCH,
              DENNY CHIN,
                  *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
              *Appellee*,

              v.                             17-1786-cr

DAVID QUATRELLA,
              *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:             DAVID E. NOVICK, Assistant United States Attorney (Avi M. Perry, Sandra S. Glover, Assistant United States Attorneys, *on the brief*), for John H. Durham, Interim United States Attorney for the District of Connecticut, New Haven, Connecticut.

FOR DEFENDANT-APPELLANT:     RICHARD A. HAMAR, San Diego, California.

Appeal from the United States District Court for the District of Connecticut (Thompson, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court are **AFFIRMED**.

Defendant-appellant David Quatrella appeals the district court's May 25, 2017 judgment, entered upon his guilty plea, convicting him of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 for his participation in an insurance fraud scheme and sentencing him principally to 36 months' imprisonment.  Quatrella also appeals the district court's July 14, 2017 order directing him to pay $1,976,558.62 in restitution to investor victims pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A.  Quatrella principally contends that (1) the district court used an erroneous intended loss amount to calculate the Sentencing Guidelines range and (2) the restitution proceedings were procedurally flawed and, in any event, the investors are not victims under the MVRA.  He also argues that he received ineffective assistance of counsel at sentencing.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

From approximately 2008 to 2016, Quatrella, an attorney, conspired with others to defraud life insurance providers by fraudulently inducing the providers to

issue three stranger-originated life insurance ("STOLI") policies.[1]  Quatrella and his co-conspirators made (or caused to be made) material misrepresentations on three life insurance policy applications "as to the purpose of the policies, the means by which the premiums would be paid, and the intent of the insured persons to sell the policies to investors."  Gov't App. 21.  For example, the policy applications falsely represented that premiums would not be financed by third parties.  Quatrella recruited the initial pool of investors to pay the policy premiums from among his law firm's clients.

Quatrella received $272,000 in commissions for his role in the scheme.  There was no actual loss to the providers because no death benefits were paid on any of the three policies before the scheme was discovered -- two policies lapsed and one policy remains in effect.  The Presentence Report ("PSR") estimated intended loss for the three policies at $14,982,714.27, an amount calculated using the government's proposed formula.

On January 4, 2017, Quatrella waived indictment and pleaded guilty to a one-count information charging him with conspiracy to commit wire fraud in violation

---

[1]  "A STOLI policy is one obtained by the insured for the purpose of resale to an investor with no insurable interest in the life of the insured -- essentially, it is a bet on a stranger's life." *United States v. Binday*, 804 F.3d 558, 565 (2d Cir. 2015).  STOLI policies became popular investment vehicles for investors "eager to bet that the value of a policy's death benefits would exceed the value of the required premium payments," but many insurance providers "adopted rules against issuing STOLI policies and took steps to detect them."  *Id.*; *see also id.* at 574 ("[I]nsurers expected STOLI policies to differ economically, to the insurers' detriment, from non-STOLI policies.").  Insurance brokers working on commission therefore had a "financial incentive to place STOLI policies by disguising them to the insurer as non-STOLI policies."  *Id.* at 565–66.

of 18 U.S.C. § 371. The plea agreement expressly stated that the court "shall order that the defendant make restitution under 18 U.S.C. § 3663A," Gov't App. 23, although the government represented during the plea hearing that "it appears that there is no actual loss in this case, so restitution may not be applicable," *id.* at 46.

On March 17, 2017, two months after Quatrella's guilty plea and two months before his sentencing, investors in the policies advised the United States Probation Office by email, copying Quatrella and the government, that they would seek a restitution order as victims under the MVRA. On May 11, 2017, the investors moved to intervene and be heard during Quatrella's proceeding, alleging more than $3 million in losses based on the two lapsed insurance policies. The government did not advocate for the investors to be treated as victims.

On May 25, 2017, following a hearing on May 23, 2017, the district court concluded that the investors were "victims" within the meaning of the MVRA and granted their motion to be heard regarding the restitution order. The court rejected Quatrella's argument that the investors were harmed by changed market conditions rather than Quatrella's criminal conduct, explaining that the "STOLI investors were harmed the moment they made their investment" because Quatrella's misrepresentations induced them to unknowingly enter into an investment that was "much riskier and worth less because of the fraudulent nature of the scheme." Gov't App. 319.

- 4 -

On May 25, 2017, the district court sentenced Quatrella principally to 36 months' imprisonment and ordered him to pay restitution to investor victims in an amount to be determined within 90 days of sentencing. For Guidelines purposes, the PSR, which the district court adopted, calculated a total offense level of 27 -- a number that included a 20-level increase under U.S.S.G. § 2B1.1(b)(1)(K) for the estimated intended loss of $14,982,714.27 -- and a corresponding sentencing range of 70 to 87 months. Because the statutory maximum term of imprisonment under 18 U.S.C. § 371 was 60 months, the effective Guidelines sentence was reduced to 60 months. The district court elected to impose a sentence well below the Guidelines range because, among other factors, the estimate of intended loss substantially overstated the seriousness of the offense in this case.[2]

On June 5, 2017, after replacing prior counsel with current counsel, Quatrella moved for resentencing pursuant to Federal Rule of Criminal Procedure 35(a), principally challenging the district court's intended loss calculation and contending that the investors participated in the fraud and therefore were not victims under the MVRA.

---

[2]    At sentencing, the district court noted there are "several ways of measuring loss in this case: The intended loss of over $14 million, which resulted in a 20-level increase; the actual gross loss to the investors of over $4 million which would result in an 18-level increase; the net loss to the victims in the amount of $2.7 million, which would result in a 16-level increase; and the gain to the defendant in the amount of $272,000, which would result in a 12-level increase." Gov't App. 370.

He also raised ineffective assistance of counsel and due process claims. On July 13, 2017, following a hearing, the district court denied Quatrella's Rule 35(a) motion.

On July 14, 2017, the district court ordered Quatrella to pay $1,976,558.62 in restitution pursuant to the MVRA.[3] This appeal followed.[4]

## I. Calculation of Intended Loss

We review a district court's factual findings as to loss amount for clear error and its legal conclusions *de novo*. *United States v. Binday*, 804 F.3d 558, 595 (2d Cir. 2015). For the purposes of calculating the Guidelines range, loss is defined as "the greater of actual loss or intended loss." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 103 (2d Cir. 2014) (quoting U.S.S.G. § 2B1.1 cmt. 3(A)). "Intended loss" means "the pecuniary harm that the defendant purposely sought to inflict." U.S.S.G. § 2B1.1 cmt. 3(A)(ii). The district court is "not required to calculate loss with 'absolute precision,'" *Binday*, 804 F.3d at 595 (quoting *United States v. Coppola*, 671 F.3d 220, 250 (2d Cir. 2012)), but it must "make a reasonable estimate of the loss" that is based on "available information" and supported by a preponderance of the evidence, *id.* (quoting U.S.S.G. § 2B1.1 cmt. 3(C)).

---

[3] Both parties stipulated to the amount of restitution, which Quatrella does not challenge on appeal.

[4] Because the government has elected not to enforce the appeal waiver contained in Quatrella's plea agreement at this stage, we proceed directly to the merits.

The district court's estimate of intended loss was reasonable and supported by a preponderance of the evidence. Adopting the PSR, the district court found that Quatrella purposely sought to commit fraud that would have caused the insurance providers to pay out $35 million for the three policies. This face-value intended loss figure was then adjusted down to about $15 million by first subtracting premiums that the insurance companies would have received, as well as the compounded interest on that income, and then adding the expenses and commissions the companies paid on the policies. *See United States v. Jenkins*, 578 F.3d 745, 749 (8th Cir. 2009) (affirming district court's finding that "a reasonable estimate of intended loss could be made by totaling the face value of the death benefits on all of the fraudulently-obtained policies and subtracting the value of the insurance premiums that [defendant's] co-schemers intended to pay the insurers"); *United States v. Bazemore*, 608 F. App'x 207, 214 (5th Cir. 2015) ("At a minimum, the intended loss figure must account for the premium payments [defendant] intended the policyholder to make to keep the policy in place until the insured died and death benefits could be paid.").

Quatrella has never offered an alternative method for estimating intended loss, and "the absence of a better alternative weighs in favor of concluding that the method used here is a reasonable one." *Binday*, 804 F.3d at 597. Moreover, the district court sentenced Quatrella to 36 months' imprisonment, well below the Guidelines

recommendation corresponding to the intended loss calculation. We find no clear error in the district court's estimate of intended loss.

## II. Restitution Order

"We review a district court's restitution order for abuse of discretion, which we will identify only if the order 'rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions.'" *United States v. Messina*, 806 F.3d 55, 67 (2d Cir. 2015) (quoting *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015)). We review challenges to the district court's findings of fact for clear error and its interpretations of law *de novo*. *United States v. Gushlak*, 728 F.3d 184, 190–91 (2d Cir. 2013).

The MVRA mandates restitution to victims of "certain crimes, such as 'an offense against property under this title . . . including any offense committed by fraud or deceit.'" *United States v. Battista*, 575 F.3d 226, 230 (2d Cir. 2009) (quoting 18 U.S.C. § 3663A(c)(1)(A)(ii)). A "victim" is "a person directly and proximately harmed as a result of the commission of an offense," including, for conspiracy offenses, "any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy." 18 U.S.C. § 3663A(a)(2).

An order of restitution should not be granted that "has the effect of treating coconspirators as 'victims,' and thereby requires 'restitutionary' payments to the perpetrators of the offense of conviction," *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir.

2006), but restitution "may not be denied simply because the victim had greedy or dishonest motives, where those intentions were not *in pari materia* with those of the defendant," *United States v. Ojeikere*, 545 F.3d 220, 223 (2d Cir. 2008). "[A] defendant's restitution liability under the MVRA is capped at the actual loss incurred by his victims." *United States v. Thompson*, 792 F.3d 273, 280 (2d Cir. 2015).

The district court properly concluded that the investors were "victims" under the MVRA, and it did not abuse its discretion by ordering Quatrella to pay $1,976,558.62 in restitution. Quatrella recruited the initial pool of investors to pay the premiums for the STOLI policies from among his clients and friends, who trusted him with their money and said they would not have invested had they been aware of the fraudulent scheme. On the record before us, there is no evidence that any of the investors were knowing participants in the scheme for which Quatrella was convicted. We find no clear error in the district court's finding that Quatrella directly and proximately harmed the investors by using false and fraudulent statements to induce them to make an investment that was ultimately "much riskier and worth less because of the fraudulent nature of the scheme." Gov't App. 319.[5]

We also reject Quatrella's arguments that the restitution order was procedurally unreasonable. Although neither Quatrella nor the government initially

---

[5]     Quatrella pleaded guilty to conspiracy; his co-conspirators were not investors but insurance brokers.

believed any restitution would be required, once the investors made known their desire to be treated as victims under the MVRA, Quatrella was given the opportunity to be heard on that issue and exercised it. A district court has broad discretion in the sentencing procedures it employs to resolve contested issues regarding restitution awards, "so long as the defendant is given an adequate opportunity to present his position." *United States v. Maurer*, 226 F.3d 150, 151 (2d Cir. 2000). Quatrella was given that opportunity here.

### III. Ineffective Assistance of Counsel

"When faced with a claim for ineffective assistance of counsel on direct appeal, we may: '(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us.'" *United States v. DeLaura*, 858 F.3d 738, 743 (2d Cir. 2017) (quoting *United States v. Adams*, 768 F.3d 219, 226 (2d Cir. 2014) (per curiam)). In this case, we choose to "decide the claim on the record before us," *id.*, because Quatrella raised and the district court rejected his ineffective assistance of counsel claim during Rule 35(a) proceedings.

To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that "(1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors,

the result of the proceeding would have been different." *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).

We agree with the district court that Quatrella cannot satisfy the "heavy burden" of demonstrating ineffective assistance of counsel. *Gaskin*, 364 F.3d at 468. We discern no error in the district court's findings that Quatrella's prior counsel "did an excellent job," "made . . . wise strategic choices," and "was entirely effective," and its conclusion that the "attack on [prior counsel's] performance is entirely without merit." Gov't App. 440–41. Quatrella faults prior counsel for failing to understand that intended loss could increase his sentence, but the record belies this contention. Indeed, prior counsel not only understood the relevance of intended loss, but he advanced the same position accepted by the district court at sentencing and now pressed by Quatrella on appeal: that the Guidelines range corresponding to intended loss substantially overstated the seriousness of the offense. And while Quatrella complains now that his prior counsel should have confronted the investor victims, the decision not to challenge the victims' credibility before the court to avoid opening the door to further testimony recounting the victims' pain and loss was clearly a strategic decision that fell "within the wide range of reasonable professional assistance." *Gaskin*, 364 F.3d at 468.

In light of our resolution, we need not address Quatrella's request to reassign this matter to a different judge on remand.

We have considered Quatrella's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk