23-7803
*U.S. v. Acevedo*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of April, two thousand twenty-five.

PRESENT:

> BARRINGTON D. PARKER,
> BETH ROBINSON,
> MYRNA PÉREZ,
> > *Circuit Judges.*

───────────────────────────────────

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                             No. 23-7803

CHRISTOPHER ACEVEDO, AKA ESSAY,

> *Defendant-Appellant.*

───────────────────────────────────

FOR APPELLEE:                          KAYLA C. BENSING, Assistant United
                                       States Attorney (David C. James,

Benjamin Weintraub, Assistant United States Attorneys, *on the brief*) *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

FOR DEFENDANT-APPELLANT: PETER J. TOMAO, Law Office of Peter J. Tomao, Garden City, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gujarati, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on November 15, 2023, is **AFFIRMED**.

After a jury trial, Defendant-Appellant Christopher Acevedo was convicted of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and causing the death of the victim through the use of a firearm, in violation of 18 U.S.C. § 924(j). Acevedo appeals, submitting both counseled and self-represented briefs. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

## I.      Sufficiency of the Evidence

We review preserved challenges to the sufficiency of the evidence without deference to the district court.  *United States v. Kelly*, 128 F.4th 387, 408 (2d Cir. 2025).  We are required to "sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021) (emphasis in original).[1]

In order for Acevedo to be convicted of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), the government had to prove:

> (1) that the [o]rganization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992).  Acevedo argues the government failed to prove that: (1) he committed the murder and (2) he did so

---

[1]  In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

for the purpose of maintaining or increasing his position in Wood City—the alleged racketeering enterprise. We disagree.

Taken in the light most favorable to the government, the evidence showed Acevedo alone getting into the white BMW, which is owned by his mother. The BMW is then seen on multiple cameras as it travels the streets for about twenty minutes; there is no evidence that anyone got into or out of the car in the course of its travels. Meanwhile, cell phone location data shows Acevedo's phone traveling generally in the direction of the shooting site, and forensic evidence shows his phone connected to the BMW by Bluetooth just before and after the murder. Twelve bullets were fired from the BMW into the car where the victim sat. A jury could reasonably infer from the video of the shooting that the shooter was sitting in the driver's seat, extending the shooting arm across the passenger seat and out the open window. After the shooting, Acevedo's girlfriend left the BMW, covered by a tarp, at a residence in Roosevelt, NY. She also gave a bag to her co-worker, which the co-worker and another man both testified they believed, based on their observations of the opaque bag, held a gun. From this evidence, a jury could reasonably find beyond a reasonable doubt that Acevedo committed the murder and did so using a firearm.

As to his purpose, if the jury can "properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership," the motive element is satisfied. *Concepcion*, 983 F.2d at 381. This motive does not need to be "the defendant's sole or principal motive." *Id.*

Less than three hours before the shooting, a member of Snow Gang stole a gold chain with a YTB (signifying "Yellow Tape Boyz") emblem off the neck of a Wood City leader and rap artist, Kayshawn Joseph, and proceeded to publicly taunt Joseph through social media. Testimony at trial established the importance of Joseph's rap music to Wood City, and that Yellow Tape Boyz was part of Wood City. A former member of Wood City explained the long-standing rivalry between Wood City and Snow Gang, and that Wood City would "get back" or "respond" whenever an opposition group taunted them. Gov't App'x at 46. This evidence explained why theft of the iconic necklace would provoke a violent response from Wood City, including Acevedo. Moreover, the jury saw video footage of Wood City members gathering following the theft of the chain and before the shooting; Acevedo and Joseph conferring before Acevedo left in his white BMW accompanied by two others in a white Mercedes; and the remaining gathered

5

members of Wood City—*not* including Acevedo and the two in the Mercedes—cheering when one received a phone message around the time of the shooting. The victim of the shooting was a member of Snow Gang; the individual in the back seat of the car, also a Snow Gang member, was the one who stole the necklace, which he was wearing around his neck at the time of the shooting.

Given this evidence, the jury had ample basis to find that Acevedo committed the shooting as part of a Wood City response to a major affront by a rival gang, and that one of his purposes was to increase or maintain his leadership position within Wood City.

## II.    Jury Instructions

In his self-represented brief, Acevedo challenges several jury instructions. First, he argues that the court's instructions allowed the jury to convict him of murder in aid of racketeering on the basis of conspiracy or attempt, thereby constructively amending the indictment and giving the jury an invalid crime of violence predicate for the charge of causing death through use of a firearm.

This argument reflects a misunderstanding of the jury charge. The district court instructed the jury about conspiracy and attempt in relation to the *racketeering* element of the murder in aid of racketeering charge, not the *murder*

6

element. The district court correctly instructed the jury that the government was required to prove Acevedo had the intent to cause the victim's death and *did* cause his death.

Second, he challenges the district court's failure to instruct the jury that he had to have advance knowledge under any aiding-and-abetting theory pursuant to *Rosemond v. United States*, 572 U.S. 65 (2014). Because Acevedo raises this objection for the first time on appeal, we review for plain error, considering, among other things, whether the claimed error affected Acevedo's "substantial rights." *United States v. Miller*, 954 F.3d 551, 557 (2d Cir. 2020).

In *Rosemond*, we held that to aid and abet using, carrying, or possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), a participant in a drug transaction must know that a confederate will carry a gun. *Id.* at 77. It is unclear how this holding could apply to Acevedo's murder in aid of racketeering conviction under 18 U.S.C. § 1959(a) since the offense itself does not require the use of a firearm. But in unpublished decisions, we *have* applied *Rosemond* to a charge of causing a death using a firearm under 18 U.S.C. § 924(j)(1). *See, e.g.*, *United States v. Canada*, 858 F. App'x 436, 438 (2d Cir. 2021), *Fernandez v. United States*, 757 F. App'x 52, 54 (2d Cir. 2018).

Even if the district court erred by including an aiding and abetting instruction and omitting a *Rosemond* instruction with respect to the § 924(j)(1) charge, that omission did not affect Acevedo's substantial rights. The government's theory of the case, and the entire thrust of its evidence and argument, was that Acevedo himself pulled the trigger. There is no reasonable possibility that the jury convicted based on an aiding and abetting theory, so any omission in the aiding and abetting instruction was not prejudicial.

## III.   Evidentiary Challenges

Acevedo's self-represented brief also challenges the court's admission of certain evidence. We review evidentiary rulings for abuse of discretion, and we are "highly deferential [to the district court] in recognition of the district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." *United States v. Coppola*, 671 F.3d 220, 244 (2d Cir. 2012).

Acevedo asserts that the testimony of a former Wood City member-turned-confidential-informant about statements of other Wood City members was inadmissible because the witness could not be considered a co-conspirator after he became a confidential informant. But the question is not whether the witness

relaying a statement in court was a co-conspirator; what matters is whether the person who *made the statement* was Acevedo's co-conspirator. Fed. R. Evid. 801(d)(2)(E). The witness's status as a confidential informant thus has no bearing on the admissibility of these statements.

Acevedo challenges the admission of prior racketeering acts, a music video, and evidence that he once threw rocks at his girlfriend's car from a white BMW as unduly prejudicial under Federal Rule of Evidence 403. However, Acevedo's counsel stipulated to the admission of the rock throwing evidence. With respect to the prior racketeering acts and the music video, this evidence, while prejudicial, was also highly probative because it helped to demonstrate Wood City's organizational purpose and Acevedo's role in Wood City. The district court did not exceed its discretion in admitting this evidence.

Finally, Acevedo challenges the FBI agent's testimony because he claims the agent relied on a "granulization theory" in testifying about the location of his cell phone. But the FBI agent did not rely on granulization, and instead testified to the "approximate coverage area" the cell phone was in. Supp. Gov't App'x at 12.

## IV.    Sentence

In his self-represented brief, Acevedo argues that the district court lacked the authority to sentence him to two life sentences.  But Acevedo was convicted of two counts, both of which allow for the imposition of a life sentence.  18 U.S.C. § 1959(a)(1) ("[P]unish[ment] . . . for murder, by death or life imprisonment."); 18 U.S.C. § 924(j)(1) ("[I]f the killing is a murder . . . punish[ment] by death or by imprisonment for any term of years or for life.").  The district court was not prohibited from sentencing him to the maximum term available for each offense.

## V.    Ineffective Assistance of Counsel

Acevedo, in his self-represented brief, argues that his trial counsel was ineffective.  When an ineffective assistance of counsel claim is raised on direct appeal, we can: (1) decline to hear the claim, allowing it to be raised under 28 U.S.C. § 2255; (2) remand for further factfinding; or (3) decide the claim on the basis of the record before us.  *United States v. Adams*, 768 F.3d 219, 226 (2d Cir. 2014).  Because Acevedo's claims are largely based on strategic decisions that are not obvious on the face of the record, we decline to consider his ineffective assistance of counsel claim on direct appeal.  *See United States v. Laurent*, 33 F.4th 63, 96–97 (2d Cir. 2022).

\* \* \*

For the reasons discussed above, the district court's judgment is

**AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11