21-454-cr
*United States v. Dzionara-Norsen*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of January, two thousand twenty-four.

Present:

> AMALYA L. KEARSE,
> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                    21-454-cr

RICHARD DZIONARA-NORSEN,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | KYLE P. ROSSI (Tiffany H. Lee, *on the brief*), Assistant United States Attorneys, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY |
| For Defendant-Appellant: | JILLIAN S. HARRINGTON, Monroe Township, NJ |

1

Appeal from a judgment of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Richard Dzionara-Norsen appeals from a February 23, 2021, judgment of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *District Judge*), following a jury trial in which he was convicted of (i) distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1); (ii) receipt and attempted receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1); and (iii) possession and attempted possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).  The district court sentenced Dzionara-Norsen to seventy-two months of imprisonment on each count, to run concurrently, and ten years of supervised release on each count, to run concurrently.  Dzionara-Norsen now appeals, raising several challenges to his conviction.  We assume the parties' familiarity with the case.

## I.    Motion to Suppress

Dzionara-Norsen argues that the district court erred by denying his motion to suppress (i) his statements to Federal Bureau of Investigation Special Agent Barry Couch and Task Force Officer Carlton Turner during a June 13, 2018, interview; (ii) the contents of his laptop, which Dzionara-Norsen provided during that interview; and (iii) his statements to Special Agent James Markovich during a June 14, 2018, interview.  "On appeal from a district court's ruling on a suppression motion, we review a district court's findings of fact for clear error, and its resolution

of questions of law and mixed questions of law and fact *de novo*." *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022).[1]

**A. June 13 Statements**

Dzionara-Norsen first argues that his June 13 statements should have been suppressed because he made them during a custodial interview without the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). We disagree. To determine "whether a suspect was in custody for the purposes of *Miranda*[,] . . . . [w]e use a two-step, objective test, that asks whether: (1) a reasonable person in the defendant's position would have understood that he or she was free to leave; and (2) there was a restraint of freedom of movement akin to that associated with a formal arrest." *United States v. Santillan*, 902 F.3d 49, 60 (2d Cir. 2018).

The district court found that the June 13 interview, which was recorded, lasted for about eighteen minutes and took place at Dzionara-Norsen's apartment just outside his apartment door; the agents appeared in plain clothes, did not display handcuffs, badges, or weapons, spoke in a conversational tone, and did not make any threats or promises; and Dzionara-Norsen was not physically restrained, at no point asked for an attorney or to stop the interview, and voluntarily returned to resume the interview twice after returning inside to his apartment. Under those circumstances, a reasonable person in Dzionara-Norsen's position would have understood that he was free to leave—indeed, he left the interview to retrieve items from his apartment twice with no repercussions. *See United States v. Familetti*, 878 F.3d 53, 60 (2d Cir. 2017) (concluding that the defendant was not in custody when he was interviewed at his home, was advised that he was not

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

under arrest and was free to leave, and did not ask or try to leave the interview); *United States v. Faux*, 828 F.3d 130, 135–36 (2d Cir. 2016) ("[C]ourts rarely conclude, absent a formal arrest, that a suspect questioned in her own home is 'in custody.'" (collecting cases)).

Dzionara-Norsen nevertheless argues that because "he suffers [from] serious mental disabilities," "he did not know that he was free to leave or refuse to speak with the agents." Appellant's Br. at 44. We are not persuaded. "[T]he objective circumstances of the interrogation," *J.D.B. v. North Carolina*, 564 U.S. 261, 271 (2011), demonstrate that a reasonable person in Dzionara-Norsen's situation would have understood (as, indeed, Dzionara-Norsen himself appears to have understood) that he was free to leave the interview at any time. Accordingly, the June 13 interview was noncustodial and therefore *Miranda* warnings were not required.

Dzionara-Norsen also argues that his June 13 statements should be suppressed as involuntary. Again, we disagree. Statements are voluntary when they are "the product of an essentially free and unconstrained choice by their maker" and involuntary if they are "coerced by police activity." *United States v. Haak*, 884 F.3d 400, 409 (2d Cir. 2018). To conclude that a statement was involuntary, courts must determine whether, under the totality of the circumstances, "the defendant's will was overborne by the police conduct" by examining "(1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Id.*

During the June 13 interview, Couch made some misleading statements downplaying the significance and purpose of the interview: he said that he was only interviewing Dzionara-Norsen because he "want[ed] to make sure" that Dzionara-Norsen was not someone that the FBI "need[ed] to be concerned about" or "target" and to ensure that he was willing "to get some counseling" for

4

his child pornography consumption. App'x at 40. Couch admitted during the suppression hearing, however, that Dzionara-Norsen was a potential target at the time of the interview. Moreover, Dzionara-Norsen averred that he suffers from autism, anxiety, and depression and took medications for those issues that affected his ability to make decisions. But, when considering the totality of the circumstances, we cannot say that the district court erred in concluding that Dzionara-Norsen's will was not overborne by Couch's misleading statements. Couch made other statements to Dzionara-Norsen during the interview suggesting that his inquiry into Dzionara-Norsen's child pornography activity could result in criminal prosecution. App'x at 42 (Couch asking Dzionara-Norsen, "I mean you know that [child pornography] is illegal right?"); *id.* at 48 (Couch stating that criminal charges could be brought against Dzionara-Norsen depending on the discretion of prosecutors); *see United States v. Mitchell*, 966 F.2d 92, 100 (2d Cir. 1992) (finding that the defendant's statements were voluntary where the agents "deemphasized, but did not misrepresent, the criminal nature of the inquiry"). Additionally, we discern no clear error in the district court's factual finding that during the interview, Dzionara-Norsen was coherent and appeared to understand the agents' questions and statements. And, as discussed above, the interview was relatively short and noncustodial, the agents used a conversational tone and did not make any threats or promises, and the agents did not display handcuffs, badges, or weapons. *See Haak*, 884 F.3d at 415 (concluding that the defendant's statements were voluntary where he was not in custody, the interview lasted a little over thirty minutes, the officers were dressed in plain clothes and did not display any weapons, he was unrestrained, and the interview was conservational).

**B. Contents of Laptop**

Dzionara-Norsen further argues that the contents of his laptop should have been suppressed because his consent to search the laptop was involuntary. We are unpersuaded. "It is well settled that one of the specifically established exceptions to the Fourth Amendment requirements that private property not be searched without a search warrant issued upon probable cause is a search that is conducted pursuant to consent." *United States v. O'Brien*, 926 F.3d 57, 75 (2d Cir. 2019). Consent must be given "freely and voluntarily." *Id.* at 76. To determine whether consent is voluntary, courts assess "whether the officer had a reasonable basis for believing that there had been consent to the search," *id.* at 77, under the totality of the circumstances, *United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006).

During the interview, Couch asked Dzionara-Norsen if he was willing to show the agents his laptop, to which Dzionara-Norsen responded, "Okay . . . ." App'x at 45. Then, when asked if the agents could search the laptop for evidence, Dzionara-Norsen said, "I give you consent," and signed a written form affirming his consent. *Id*. at 46. These circumstances certainly demonstrate voluntary consent. Dzionara-Norsen's argument that his consent was involuntary because of the agents' misleading statements regarding the purpose of the interview and his mental health status fails for the same reasons described above—that is, the ample evidence of voluntariness.

**C. June 14 Statements**

Finally, Dzionara-Norsen argues that that his June 14 statements should be suppressed because they were tainted by the allegedly coercive police conduct during the June 13 interview. Because we have found that *Miranda* warnings were not required and that his statements and

6

consent to search his laptop were voluntary during the June 13 interview, the June 14 interview was not tainted.

## II.    Expert Witnesses

Dzionara-Norsen argues that the district court abused its discretion by denying his requests to present the following expert witnesses: (1) R. Douglas Alling, a medical professional who treated Dzionara-Norsen for ten years, would have testified that Dzionara-Norsen is autistic and took "prescribed medications that could have bearing on guilt," App'x at 116; (2) Frank J. Salamone, Psy. D., would have testified that he diagnosed Dzionara-Norsen with autism and was "particularly versed in when autism, child pornography, and the courts collide," *id.*; and (3) Dennis Debbaudt would have testified that people with autism may be prone "to mak[ing] misleading statements or false confession[s]," *id.* at 155. Dzionara-Norsen contends that the district court should have admitted this expert testimony because it was relevant to his defense that his statements during the interviews were involuntary.

We review the district court's evidentiary rulings, including decisions to preclude expert testimony, for abuse of discretion. *See Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962). "Generally, an expert may be permitted to testify if he is qualified, reliable, and helpful." *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021) (citing Fed. R. Evid. 702). And, of course, the expert testimony must be relevant to be admissible. *Id.* (citing Fed. R. Evid. 401, 402). A defendant seeking to introduce expert testimony must provide a disclosure for each expert witness, which must contain, in part, "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii). Where a defendant fails to comply with such disclosure requirements, a

7

court may prohibit the party from introducing the evidence at trial. Fed. R. Crim. P. 16(d)(2)(C). "On appeal, we must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Gatto*, 986 F.3d at 117.

The district court did not abuse its discretion by precluding this expert testimony. With respect to Dr. Alling, Dzionara-Norsen failed to comply with the disclosure requirements of Rule 16(b)(1)(C): he submitted Dr. Alling's *curriculum vitae* and a brief summary of the proposed testimony, but failed to provide a full statement of Dr. Alling's opinions and reasons for them. As for Salamone, his proposed testimony—that "[i]ndividuals with Asperger's syndrome . . . [are] especially vulnerable to committing this sort of offense," App'x at 128—is irrelevant because it has no tendency to make the existence of any element of the relevant offenses less likely. Finally, Debbaudt did not appear to be qualified as an expert on autism, having limited educational or practical experience supporting his purported expertise.

## III. Sufficiency of the Evidence

Dzionara-Norsen argues that the government's evidence was insufficient to support his convictions. We review the sufficiency of the evidence *de novo*, *United States v. Laurent*, 33 F.4th 63, 75 (2d Cir. 2022), and "are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict," *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). We must uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Dzionara-Norsen first contends that the evidence failed to establish that he knowingly permitted others to download child pornography from his computer, as required for the distribution

of child pornography charge. But there was evidence that he used a peer-to-peer software, eMule, to distribute child pornography to others: in March 2018, an agent downloaded a pornographic video clip — which the agent identified as part of the "Gracel" series based on his experience with other investigations—from an IP address tracked to Dzionara-Norsen's mother's residence. In his interviews, Dzionara-Norsen confirmed that he had used eMule and understood how it worked, lived at his mother's residence in March 2018, used the term "Gracel" to search for child pornography, and knew others could download child pornography through peer-to-peer software from his computer. *See United States v. Clarke*, 979 F.3d 82, 91 (2d Cir. 2020) (finding sufficient evidence of knowing distribution based on defendant's admission that "by using the network to download child pornography from the computers of other BitTorrent users, he [knew he] was essentially sharing files of child pornography").

Dzionara-Norsen further argues that the government did not prove the Gracel series video depicted a minor, rather than a developmentally delayed adult. We reject this contention. The government produced an expert witness who testified that the person in the Gracel series was a prepubescent female. Moreover, the jury was given the opportunity to view the video. *United States v. Spoor*, 904 F.3d 141, 152 (2d Cir. 2018) ("Viewing the videos, the jury was entitled to find that the boys [depicted] were approximately nine and ten years old.").

Dzionara-Norsen further argues that the government did not prove that he knowingly received or attempted to receive child pornography and possessed or attempted to possess child pornography because no child pornography files were recovered from his laptop. But there was ample evidence that he had done so. Dzionara-Norsen stated in an interview that he viewed child pornography out of "curiosity," App'x at 42, and that he would "download [child pornography] .

9

. . and just look at it and delete it," *id.* at 41. He also stated that his laptop did not contain any child pornography because he "might have deleted it." *Id.* at 45. His stated habits were corroborated by the forensic examination of his laptop revealing that he had opened, accessed, and viewed files with names suggesting that the contents thereof were pornographic in nature and involved children. He estimated viewing about 200 videos or images of child pornography in his lifetime.

## IV. Amendment of the Indictment

Dzionara-Norsen argues that the district court constructively amended the indictment, in violation of the Fifth Amendment, by instructing the trial jury that it could convict him on Counts Two and Three if he received/possessed *or* attempted to receive/possess child pornography, even though each count was framed in the indictment conjunctively, charging him with receipt/possession *and* attempted receipt/possession. He contends that the use of "or" instead of "and" constituted a constructive amendment of the indictment.

Because Dzionara-Norsen did not object on these grounds before the district court, we review for plain error. *United States v. Calderon*, 944 F.3d 72, 91 (2d Cir. 2019). "A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted. . . . either where (1) an additional element, sufficient for conviction, is added, or (2) an element essential to the crime charged is altered." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018).

The district court's instructions on both counts were entirely correct. The indictment here did not allege that Dzionara-Norsen necessarily committed both the substantive offense and the attempted offense; rather, by using the conjunctive in each count, it merely set forth the alternate means of committing the same crime under the statute. *See United States v. McDonough*, 56 F.3d

10

381, 390 (2d Cir. 1995) ("Where there are several ways to violate a criminal statute, . . . federal pleading requires that an indictment charge in the conjunctive to inform the accused fully of the charges."); *United States v. Mejia*, 545 F.3d 179, 207 (2d Cir. 2008). The instruction in the disjunctive did not constructively amend the indictment.

## V.     Ineffective Assistance of Counsel

Dzionara-Norsen contends that his trial counsel rendered constitutionally ineffective assistance by failing to introduce expert witnesses on his autism diagnosis at the suppression hearing and trial. But we decline to address this claim because it "cannot be reliably decided on the present record," *United States v. DeLaura*, 858 F.3d 738, 743 (2d Cir. 2017), and, instead, follow our typical practice of leaving such claims to be raised in a motion under 18 U.S.C. § 2255, *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003).

*             *             *

In addition to the arguments discussed above, which were raised in Dzionara-Norsen's counseled brief, we have also carefully considered all the arguments raised in his supplemental *pro se* brief and find them unpersuasive. For the reasons stated above, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

11